The STATE of Ohio (City of Akron), Appellant,

v.

DETTLING, Appellee.

[Cite as *State v. Dettling* (1998), 130 Ohio App.3d 812.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19133.

Decided Dec. 23, 1998.

*Max Rothal,* Director of Law, *Douglas J. Powley,* Chief City Prosecutor, and *John A. Mascolo,* Assistant City Prosecutor, for appellant.

*Christopher J. Niekamp,* for appellee.

Quillin, Judge.

Appellant-plaintiff the city of Akron appeals an order suppressing evidence. We reverse.

## I

On March 19, 1998, at approximately 3:00 a.m., Officers Campbell and Butusov of the Akron University Police stopped to investigate a parked vehicle. The vehicle's interior dome light was on and defendant-appellee William B. Dettling was lying on the front seat. The officers suspected that Dettling was engaged in a theft offense.

Campbell approached the vehicle and asked Dettling what he was doing. Dettling explained that he owned the vehicle and was looking for a compact disc. Campbell noticed that Dettling smelled like an alcoholic beverage and asked Dettling to step from the vehicle so that Butusov could perform a field sobriety test. Dettling complied. Once outside the vehicle, Campbell asked Dettling if he could search Dettling's vehicle. Dettling answered "yes." While Butusov administered the field sobriety test, Campbell searched the vehicle.

Campbell discovered a small pipe in the center console of Dettling's vehicle. Campbell asked Dettling what it was and Dettling admitted that it was a marijuana pipe. As a result, Dettling was arrested for possessing drug paraphernalia.

Dettling moved to suppress the marijuana pipe, claiming that the initial encounter was unconstitutional and that the consent to search the vehicle was involuntary. After a hearing, the trial court granted the motion. The trial court found that "[a]lthough there were proper reasons for the officers to stop and investigate the circumstances, the subsequent search of the vehicle was not voluntarily consensual." The city appeals the trial court's conclusion that Dettling's consent was involuntary.

## II

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 14, Article I of the Ohio Constitution similarly protects "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Section 14, Article I of the Ohio Constitution has been interpreted as providing protections that are coextensive with those provided by the Fourth Amendment

to the United States Constitution. *State v. Robinette* (1997), 80 Ohio St.3d 234, 245, 685 N.E.2d 762, 771 (*"Robinette II "*).

Reasonableness is the touchstone of Fourth Amendment jurisprudence. *Ohio v. Robinette* (1996), 519 U.S. 33, 38–39, 117 S.Ct. 417, 420–421, 136 L.Ed.2d 347, 354 (*"Robinette I "*). A search conducted without a warrant supported by probable cause is *per se* unreasonable. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–2044, 36 L.Ed.2d 854, 858. One exception to this rule is consent. *Id.* When the prosecution seeks to justify a search based on consent, it has the burden of proving "that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.,* 412 U.S. at 248, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.

In this case, although the trial court found that it was lawful to detain Dettling, it concluded that Dettling's consent to search was not freely or voluntarily given. In doing so, the trial court cited *Robinette II* for the proposition that "police should ensure that a detainee knows that he or she is free to refuse consent, despite the officer's request to search. While no magic words are to be used by the officer, *that knowledge has to be known or imparted to the detainee before an approval can be considered consensual.*" (Emphasis added.) However, " '[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent.' " *Robinette I,* 519 U.S. at 39, 117 S.Ct. at 421, 136 L.Ed.2d at 355, quoting *Bustamonte,* 412 U.S. at 227, 93 S.Ct. at 2047, 36 L.Ed.2d at 863. See, also, *Robinette II, supra,* 80 Ohio St.3d at 245, 685 N.E.2d at 771 (concluding that "the Ohio Constitution does not require a police officer to inform an individual, stopped for a traffic violation, that he or she is free to go before the officer may attempt to engage in a consensual interrogation"). Therefore, the trial court erred in its interpretation of *Robinette II.*

Additionally, *Robinette II* is factually distinguishable from the instant case. *Robinette II* involved a consent obtained during an *unlawful* detention. *Id.* at 241, 685 N.E.2d at 768–769. Therefore, the issue in *Robinette II* was whether an officer should be required to inform a defendant that the defendant is free to go prior to requesting consent. *Id.* at 245, 685 N.E.2d at 771. In the instant case, the trial court specifically found that it was *lawful* to detain Dettling in order to administer a field sobriety test. Therefore, Dettling was never free to go and *Robinette II* does not apply.

Voluntariness is to be determined from the totality of the circumstances. *Bustamonte,* 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. Among the circumstances to be considered are the length of the detention, the

repeated and prolonged nature of the questioning, and the use of physical punishment. *Id.*

In this case, Dettling consented without hesitation after only a brief detention and some routine questions. Dettling testified that he was never physically restrained, grabbed, or thrown anywhere, and that the officers were courteous and professional at all times. The officers did not even have to request Dettling's identification; Dettling voluntarily offered it to them immediately upon getting out of his car. Although Campbell never informed Dettling that he could refuse to give consent, that single factor is not sufficient to outweigh the glaring lack of evidence of duress or coercion.

*Judgment reversed.*

Reece, P.J., and Dickinson, J., concur.

Quillin, J., retired, of the Ninth District Court of Appeals, sitting by assignment.