DECISION AND JOURNAL ENTRY
Appellant, Walter J. Westfall, appeals his conviction in the Summit County Court of Common Pleas. We affirm in part and reverse in part.
 I.
In the early morning of January 9, 1999, Officers Michael Yohe and David Hammond of the City of Akron Police Department noticed Mr. Westfall driving his pickup truck in the vicinity of the intersection of Fifth Street and Talbot Avenue in the City of Akron. The night was cold and a snowstorm was in progress. Officer Yohe noted Mr. Westfall failed to use his turn signal when he made a left turn from Fifth to Talbot. The Officers proceeded to pull Mr. Westfall over. While Officer Hammond was writing a ticket for Mr. Westfall's failure to use his turn signal, Officer Yohe asked Mr. Westfall if he could search Mr. Westfall's truck. Mr. Westfall responded affirmatively. Mr. Westfall also informed Officer Yohe that he had a handgun concealed in a briefcase behind his seat. Mr. Westfall was placed under arrest. During Officer Yohe's search, he discovered a .45 caliber semiautomatic handgun, which was loaded with a full clip of ammunition and one round in the chamber and was concealed in a briefcase behind Mr. Westfall's seat. Officer Yohe also found a box containing a set of hunting knives in the pocket of the driver's side door of Mr. Westfall's truck.
Mr. Westfall was indicted on two counts by the Summit County Grand Jury on January 14, 1999.[1] He was charged with one count of carrying a concealed weapon, in violation of R.C.2923.12, in regard to the knives, and one count of carrying a concealed weapon, in violation of R.C. 2923.12, in regard to the handgun. On February 11, 1999, Mr. Westfall moved to suppress the evidence that Officer Yohe found during his search of Mr. Westfall's truck, namely the knives and the handgun. The trial court conducted a suppression hearing on February 23, 1999. The trial court overruled Mr. Westfall's motion to suppress on March 16, 1999. On March 29, 1999, Mr. Westfall filed his proposed jury instructions, including instructions on two of the affirmative defenses to carrying a concealed weapon, with the trial court. A jury trial was held, commencing on March 30, 1999. At trial, Mr. Westfall moved for acquittal on each count based on Crim.R. 29 after the close of the prosecution's case-in-chief and after the close of all evidence. Mr. Westfall also objected to the trial court's decision to omit one of the affirmative defense instructions from the jury instructions. In a verdict journalized on April 5, 1999, the jury found Mr. Westfall guilty of both counts. Mr. Westfall was sentenced accordingly. This appeal followed.
 II.
Mr. Westfall asserts six assignments of error. We will address each in due course consolidating his third, fourth, and sixth assignments of error to facilitate review.
 A. First Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY ALLOWING EVIDENCE THAT WAS FOUND DURING AN ILLEGAL SEARCH.
 Mr. Westfall avers that he used his turn signal, and therefore, the Officers had no probable cause to stop him. He further asserts that, as the stop was not based on probable cause, the subsequent search of his vehicle was incident to an illegal seizure and that, therefore, the evidence discovered in the search of his vehicle should have been suppressed. We disagree.
Generally, "determinations of reasonable suspicion and probable cause should be reviewed de novo" by an appellate court.Ornelas v. United States (1996), 517 U.S. 690, 699,134 L.Ed.2d 911, 920. However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. Reasonable suspicion and probable cause are nontechnical, commonsense conceptions dealing with "`the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates (1983),462 U.S. 213, 231, 76 L.Ed.2d 527, 544, quoting Brinegar v. UnitedStates (1949), 338 U.S. 160, 175, 93 L.Ed. 1879, 1890.
R.C. 4511.39 mandates that "a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning."
At the suppression hearing Officer Yohe testified that he observed Mr. Westfall make a left turn without signaling. Mr. Westfall asserted, by way of photographs of the area where the stop occurred, that the Officers could not see his turn signal due to shrubbery in the area. However, the photographs were taken during the day, while Officer Yohe observed Mr. Westfall at night when a turn signal would be more visible through bushes. Officer Yohe also observed Mr. Westfall during a snowstorm that may have increased the visibility of Mr. Westfall's turn signal due to the reflectivity of the snow. Therefore, we conclude that Officer Yohe had probable cause to stop Mr. Westfall to issue a ticket. Accordingly, we conclude that the Officers were justified in stopping Mr. Westfall and that the Officers' detention of Mr. Westfall while a ticket was written was lawfully related to the purpose of the original stop. See State v. Robinette (1997),80 Ohio St.3d 234, 240. Therefore, as Mr. Westfall's detention was not unlawful, we must determine whether consent was freely given based on the totality of the circumstances. See State v. Dettling
(1998), 130 Ohio App.3d 812, 815. "Among the circumstances to be considered are the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment." Id. at 815-16.
Viewing the totality of the circumstances, we conclude that Mr. Westfall's consent was voluntary. The Officers did not threaten or badger Mr. Westfall. Officer Yohe simply asked if he could search Mr. Westfall's vehicle, and Mr. Westfall consented. Therefore, we affirm the trial court's decision overruling Mr. Westfall's motion to suppress the evidence discovered in the search of his vehicle.
 B. Second Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY NOT ALLOWING DEFENDANT'S EXHIBIT-A, EVIDENCE IMPORTANT TO DEFENDANT'S CASE TO BE EXAMINED BY THE JURY.
 Mr. Westfall asserts, however inartfully,[2] that the trial court erred in failing to instruct the jury on an affirmative defense although he raised the affirmative defense at trial and requested a jury instruction on the affirmative defense. We agree.
When a defendant has requested a jury instruction on an affirmative defense or objected to the lack of such an instruction "`[t]he proper standard for determining * * * whether a defendant has successfully raised an affirmative defense * * * is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'" State v. Palmer
(1997), 80 Ohio St.3d 543, 564, quoting State v. Melchior (1978),56 Ohio St.2d 15, paragraph one of the syllabus.
R.C. 2923.12 prohibits one from "knowingly carry[ing] or hav[ing], concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance." However, R.C.2923.12(C) also provides numerous defenses to the general prohibition of carrying a concealed weapon. Two of these defenses are relevant to Mr. Westfall's second assignment of error:
 (1) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in or was going to or from the actor's lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent person in going armed.
 (2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in a lawful activity and had reasonable cause to fear a criminal attack upon the actor or a member of the actor's family, or upon the actor's home, such as would justify a prudent person in going armed.
R.C. 2923.12(C).
Mr. Westfall requested and the trial court instructed the jury on the affirmative defense enumerated R.C. 2923.12(C)(2). Mr. Westfall also requested an instruction on the first above-enumerated defense, involving a person whose business would justify a prudent person in going armed, and, after proffering such an instruction to the trial court, objected to the trial court's decision not to include an instruction on that defense in the jury instructions.
At trial, Mr. Westfall testified that he would often check his vacant rental properties late at night to ensure that no drug activity or break-in was in progress. He further testified that, on the night at issue here, he was engaged in such a check just prior to proceeding to the area where the Officers stopped him. He testified that the area was notorious for drug activity. He further testified that the area had a high crime rate in general and that he was frightened to venture forth in that area late at night. His testimony was uncontradicted. We adduce that a landlord who is checking his vacant rental property for drug activity late at night in a drug infested area might well be particularly susceptible to criminal attack. Accordingly, we conclude that Mr. Westfall presented evidence, which would be sufficient, if believed, to raise a question in the minds of reasonable persons concerning the existence of this affirmative defense. Therefore, we conclude that the trial court erred in failing to instruct the jury on the affirmative defense enumerated in R.C. 2923.12(C)(1).
Accordingly, Mr. Westfall's second assignment of error is sustained to the extent that he avers that the trial court erred in not instructing the jury on the affirmative defense enumerated in R.C. 2923.12 (C)(1) and is, in remaining part, moot. See App.R. 12(A)(1)(c).
 C. Fifth Assignment of Error TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY ALLOWING THE CHARGE OF CCW COUNT 2.
 Mr. Westfall avers that the trial court erred in failing to instruct or otherwise take notice of an affirmative defense, which, although not explicitly raised, was clear and undisputed on the face of the record. We agree.
Where a defendant has not objected to the lack of a jury instruction or proffered an instruction on the asserted affirmative defense, we must determine if the lack of such an instruction constitutes plain error. State v. Durkin (1981),66 Ohio St.2d 158, 161. Crim.R. 30(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects" at trial. However, Crim.R. 52(B) provides that "a court may take notice of plain errors that affect substantial rights[.]" Durkin,66 Ohio St.2d at 161. Furthermore, an erroneously omitted jury instruction "`does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Cooperrider (1983), 4 Ohio St.3d 226,227, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
As noted above, R.C. 2923.12 prohibits one from "knowingly carry[ing] or hav[ing], concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance." However, R.C. 2923.12 also provides numerous defenses to the general prohibition of carrying a concealed weapon. One of these defenses is relevant to Mr. Westfall's second assignment of error:
 (4) The weapon was being transported in a motor vehicle for any lawful purpose, and was not on the actor's person, and, if the weapon was a firearm, was carried in compliance with the applicable requirements of division (C) of section 2923.16 of the Revised Code.
R.C. 2923.12(C)(4).
Mr. Westfall did not request an instruction on the defense enumerated in R.C. 2923.12(C)(4). The evidence below on the issue of the location of the knives was clear and unconverted. Officer Yohe stated that the knives were in their box in the pocket of the vehicle's door. Accordingly, the evidence showed that "[t]he weapon was being transported in a motor vehicle for any lawful purpose, and was not on the actor's person * * *." R.C.2923.12(C)(4). The trial court did not instruct on this affirmative defense. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v. Williford (1990),49 Ohio St.3d 247, 251. Due to the state of the evidence below, we cannot conclude that the lack of instruction on this affirmative defense did not effect a substantial right or that the trial court's failure to give the instruction did not clearly effect the outcome of the trial.
Accordingly, Mr. Westfall's fifth assignment of error is sustained to the extent that he avers that the trial court erred in not instructing the jury on the affirmative defense enumerated in R.C. 2923.12(C)(4) and is, in remaining part, moot. See App.R. 12(A)(1)(c).
 D. Third Assignment of Error THE OFFICER GAVE DIFFERENT TESTIMONY AS TO THE ACCESSIBILITY OF THE WEAPON AT THE SUPPRESSION HEARING AND AT THE TRIAL.
 Fourth Assignment of Error THE COURT APPOINTED ATTORNEY INSTRUCTED DEFENDANT NOT TO GIVE COMPLETE TESTIMONY AT THE TRIAL SO AS TO NOT LOOK BAD BY IMPLYING THE OFFICER WAS NOT TELLING THE TRUTH.
 Sixth Assignment of Error JUDGE JANE BOND ERRED TO THE PREJUDICE OF DEFENDANT BY NOT OVERTURNING THE GUILTY VERDICT AT SENTENCING WHEN SHE STATED THAT SHE HERSELF WAS UNSURE OF WHAT REALLY HAPPENED THAT NIGHT.
 Mr. Westfall avers that Officer Yohe changed his testimony between the suppression hearing and trial. He further avers that his counsel gave him bad advice concerning his testimony and that the trial court judge stated that she was unsure of the events of that night. As we find the case must be reversed for retrial due to incomplete jury instructions, these assignments of error are rendered moot. Accordingly, we decline to address them. See App.R. 12(A)(1)(c).
 III.
Mr. Westfall's first assignment of error is overruled. His second and fourth assignments of error are sustained to the extent that they allege that the trial court erred by failing to give the applicable jury instructions and are otherwise rendered moot. Mr. Westfall's remaining assignments of error are also rendered moot by our disposition of his second and fourth assignments of error. The judgment of the Summit County Court of Common Pleas is affirmed as to its denial of Mr. Westfall's suppression motion and reversed as to its verdict and the cause is remanded for retrial or other further proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
SLABY, J., CONCURS
[1] Although, apparently, Mr. Westfall was also charged with failing to use his turn signal, in violation of R.C. 4511.39, that charge was not before the trial court and is not before this court.
[2] The State argues, in its sole argument in response to Mr. Westfall's second through sixth assignments of error, that Mr. Westfall's second through sixth assignments of error are not set forth in compliance with App.R. 16(A)(7). We disagree.