**The STATE of Ohio, Appellant,**

**v.**

**ISBELE, Appellee.**

[Cite as *State v. Isbele* (2001), 144 Ohio App.3d 780.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2001–02–034.

Decided Aug. 27, 2001.

*Robin N. Piper,* Butler County Prosecuting Attorney, and *Megan E. Shanahan,* Assistant Prosecuting Attorney, for appellant.

*Melynda W. Cook,* for appellee.

POWELL, Judge.

Plaintiff-appellant, the state of Ohio, appeals the decision of the Butler County Court of Common Pleas granting the suppression motion of defendant-appellee, Letitia D. Isbele. Since we conclude that the trial court's decision to suppress the evidence was proper, we affirm.

Officers Steve Ezerski and Kenneth Mynhier of the Middletown Police Department were on routine patrol when they observed a pickup truck stop at an intersection even though there was no stop sign in the direction the truck was traveling. The officers followed the truck and observed it veer left of center. The officers "ran the truck's tags" and learned that the owner of the vehicle had prior convictions for driving under the influence of alcohol. The officers decided to stop the vehicle to investigate.

The truck pulled into a parking lot of an apartment complex and parked. The officers positioned their cruiser behind the truck and activated its overhead lights. Officer Ezerski approached the driver's side of the vehicle while Officer Mynhier approached the passenger's side. Officer Ezerski asked the driver to

exit the vehicle to perform field sobriety tests. When the driver exited the vehicle, Officer Ezerski performed a protective pat-down search. Officer Ezerski felt an object in the driver's pants pocket that he believed to be contraband. Upon further investigation, Officer Ezerski learned that the object was a baggie of cocaine. Officer Ezerski placed the driver under arrest, handcuffed him, and placed him in the police cruiser.

Appellee was a passenger in the truck. When the driver of the truck was arrested, she exited the vehicle. She told the officers that "she didn't do anything" and asked "if she could go inside" the apartment building where appellee apparently resided. Officer Mynhier stopped appellee and instructed her that she was not free to leave. Officer Mynhier told appellee that there was a "likelihood" she was going to the city of Middletown Jail and if she were searched at the jail and drugs were found, she would be charged with illegal conveyance of drugs into a detention facility. In response to Officer Mynhier's remarks, appellee retrieved a folded piece of paper containing cocaine from her "fanny pack" and handed it to him. The officers arrested appellee and took her to jail, where it was discovered that she possessed another controlled substance in the form of a pill.

Appellee was charged with possession of cocaine and possession of hydrocodone. She moved the trial court to suppress the evidence of drug possession on the basis that the officers violated her right to be free from unreasonable searches and seizures. At the suppression hearing, both officers testified that appellee was not free to leave the scene at any time during their encounter with her. Both officers admitted that they did not fear that appellee was a threat to their safety. They freely permitted appellee to reach into her fanny pack. Officer Mynhier testified that he had every intention to take appellee to jail to be searched, or at least detain her until a female officer could come to the scene to perform a search. Neither officer observed appellee engaging in any criminal activity. Their suspicion that appellee might have possessed drugs was based only upon her status as a passenger in a truck where the driver was found to have possessed cocaine.

The trial court granted appellee's motion to suppress the evidence. The trial court concluded that the officers did not have a reasonable suspicion that appellee was engaged in criminal activity. As such, the trial court found that the police obtained the evidence against appellee in violation of her right to be free from unreasonable searches and seizures. The state appeals the trial court's decision and raises one assignment of error.

In its assignment of error, the state argues that the trial court's decision to grant appellee's motion to suppress was "clearly erroneous." The state argues that Officer Mynhier's initial contact with appellee was a legitimate investigative

detention that was necessitated by appellee's behavior. According to the state, appellee was nervous and attempted to "flee the scene" by crying and repeatedly pleading: "I didn't do anything. Can I go?" The state contends that because appellee was nervous, claimed innocence without being questioned, and repeatedly asked to leave, the officers "clearly" had a reasonable suspicion that she might have illegal drugs on her person. We disagree.

In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036; *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144. However, an appellate court independently determines without deference to the trial court whether the court applied the appropriate legal standard to the facts. *Id.*

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See, *e.g., United States v. Hensley* (1985), 469 U.S. 221, 226, 105 S.Ct. 675, 678, 83 L.Ed.2d 604, 610–611. Accordingly, a police officer must be able to point to articulable facts that give rise to a reasonable suspicion that an individual is currently engaged in or is about to engage in criminal activity to conduct an investigatory stop within the parameters of the Fourth Amendment. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 905–906. Reasonable suspicion connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or hunch." *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

During a legitimate investigative stop, if a police officer has a reasonable suspicion that an individual is armed, the officer may conduct a limited protective search for the safety of the officer and the public. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue the investigation without fear of violence. *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. The reasonableness of both an investigatory stop and a protective search must be viewed in light of the totality of the circumstances. *Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 at paragraph one of the syllabus.

In the context of passengers of motor vehicles involved in investigatory traffic stops, an officer may order the passengers to get out of the vehicle pending completion of the stop. *Maryland v. Wilson* (1997), 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47–48. However, once a passenger has left the vehicle, the officer must possess specific and articulable facts to believe that a

passenger is armed and dangerous, or is engaged in criminal activity, to justify any further intrusions. See, *e.g., State v. Taylor* (2000), 138 Ohio App.3d 139, 145, 740 N.E.2d 704, 708–709. For example, furtive movements by a passenger may provide a reasonable basis for an officer to conduct a protective frisk, *State v. Williams* (1994), 94 Ohio App.3d 538, 544, 641 N.E.2d 239, 243, as can an officer's observation of bulges in the passenger's clothing that are indicative of concealed weapons. See *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 111–112, 98 S.Ct. 330, 334, 54 L.Ed.2d 331, 337–338. Where a passenger is cooperative and gives no indication that he is armed and dangerous, an officer may not conduct a protective frisk. See, *e.g., State v. Cantelupe* (June 28, 2000), Harrison App. No. 99–511CA, unreported, 2000 WL 875356; *State v. Caldwell* (Sept. 29, 2000), Huron App. No. H–00–13, unreported, 2000 WL 1434118. In addition, where an officer has no reasonable articulable suspicion that a passenger is or has been involved in criminal activity, the officer may not detain the passenger beyond the scope of the original traffic stop. *Taylor,* 138 Ohio App.3d at 146, 740 N.E.2d at 709–710. A passenger's mere propinquity to others in the vehicle whom are independently suspected of criminal activity does not, without more, give reasonable cause to search that person. *Id.; State v. Cantelupe;* see, also, *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245–246.

In *Taylor,* an officer initiated a traffic stop of a vehicle after his laser instrument indicated that the vehicle was speeding. *Taylor* at 142, 740 N.E.2d at 706–707. Upon investigation, the officer discovered that the driver's license was suspended and arrested him. *Id.* While conducting a search of the driver incident to arrest, the officer discovered two grams of marijuana. *Id.* at 143, 740 N.E.2d at 707. The officer noticed a can of air freshener and a cellular phone in the car, and that the car generally "looked lived in." *Id.* at 148, 740 N.E.2d at 711. On the basis of his observations and the fact the driver had marijuana on his person, the officer detained the passenger, searched him, and eventually discovered cocaine. *Id.* at 144, 740 N.E.2d at 707–708. In reversing the trial court's decision denying a motion to suppress, the Second District Court of Appeals rejected the notion that the discovery of a minimal amount of drugs in the possession of one occupant of a vehicle creates a reasonable basis to suspect criminal activity on the part of another. *Id.* at 147, 740 N.E.2d at 710. The court further concluded that the condition of the interior of the car did not justify a search and detention of its passengers:

"These may be articulable facts but they certainly do not provide reasonable grounds for conducting the search. * * * [I]f a cellular phone in the unkempt passenger compartment of a vehicle constitutes reasonable articulable facts

sufficient to justify an investigation of the occupants for drug trafficking, then we are all at risk." *Id.* at 148–149, 740 N.E.2d at 711.

In this case, Officers Ezerski and Mynhier testified that there was no evidence that appellee was engaged in criminal activity. The officers freely conceded that they believed appellee posed no threat of harm to them. Rather, the officers detained appellee only because they assumed that since the driver of the truck possessed drugs, she must possess them too. Although the officers' assumption proved to be correct, the officers lacked reasonable articulable suspicion to detain or search appellee. The officers had no reason to detain appellee after they arrested the driver of the vehicle. Consequently, the detention of appellee was unreasonable under the circumstances.

Contrary to the state's assertion, a request to terminate an encounter with a police officer is not at all equivalent to a suspect who engages in deliberately furtive actions or attempts to flee at the approach of strangers or law enforcement officers. Cf. *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936–937 (furtive actions and flight at approach of officer are strong indicia of *mens rea* and, when coupled with an officer's specific knowledge relating suspect to evidence of crime, justify an officer's decision to seize suspect). Nor are we convinced that appellee's nervousness and pleas to leave "clearly" or reasonably suggest that she possessed drugs. To paraphrase *State v. Taylor*, if nervousness, crying, and a request to leave during a traffic stop constitutes reasonable articulable facts to justify a search and seizure of the vehicle's occupants, then we are all at risk.

The actions of the officers in this case deprived appellee of her right to be free from unreasonable searches and seizures. The trial court correctly granted appellee's motion to suppress. Accordingly, the state's assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.