{¶ 32} Because I agree with the principal opinion's result, but disagree with the rationale used to support the opinion's conclusion, I concur only in the judgment to affirm the trial court's decision to grant appellee's (defendant's) motion to suppress evidence.
 {¶ 33} The principal opinion maintains that the arresting officer requested the appellee to submit to a patdown search for weapons. The opinion then notes that an officer need not obtain a suspect's consent for a patdown search for weapons if the officer has reason to believe that the suspect is armed and dangerous and that in the instant case, the officer did possess ample reason to conduct a weapon patdown search. Thus, the opinion reasons, the appellee's "consent to the patdown is superfluous." The opinion then concludes that the officer unlawfully exceeded the scope of the patdown search because the officer seized nonthreatening contraband from appellee's pocket when the contraband's nature was not immediately apparent (i.e. the small, soft hallucinogenic mushroom did not appear to be a weapon).
 {¶ 34} The prosecution, however, argues that the appellee did not limit his consent to a patdown search for weapons. Rather, the prosecution contends that the appellee consented to a full search of his person and thereby waived his Fourth Amendment protections.
 {¶ 35} After my review of the transcript, I conclude that the prosecution's argument is correct on this point. Trooper Woodyard's suppression hearing testimony does not support the principal opinion's view that the appellee consented to a limited patdown weapons search rather than a full search of his person. The testimony, if believed, indicates that the appellee did not limit the officer's search in any manner.[1] This point does not end the inquiry, however.
 {¶ 36} The trial court's basis for granting the appellee's motion to suppress evidence centered on the appellee's consent to search, not the scope of the search. The trial court held, after hearing the facts adduced at the motion hearing, that the appellee's will to consent was overborne by the authorities' "overwhelming show of force." Appellant asserts that the record in the instant case does not support the trial court's conclusion.
 {¶ 37} Initially, the appellant contends that the trial court erred by analyzing the consent to search issue under the "unlawful detention" standard espoused in State v. Robinette (1997), 80 Ohio St.3d 234,685 N.E.2d 762 (i.e. once a person has been unlawfully detained, in order for that person's consent to be an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that she or she had the freedom to refuse to answer further questions and could in fact leave the scene).[2] In Robinette,
the Ohio Supreme Court held that the totality of the circumstances test controls in an unlawful detention setting and courts must determine whether the consent to search is voluntary. An important consideration in an unlawful detention setting is the detainees knowledge that he or she is free to withhold consent.
 {¶ 38} In Florida v. Royer (1983), 450 U.S. 491, 103 S.Ct. 1319,75 L.Ed.2d 229, that court held that when consent is obtained during an illegal detention, the consent is negated, even though voluntarily given, if the consent is the product of the illegal detention and not the result of an independent act of free will. Thus, a detainee's consent to search during an unlawful detention is not valid unless the prosecution can show that the detainee's consent was an independent act of free will that would have purged the taint of the unlawful detention. See, also,State v. Piens (2000), 140 Ohio App.3d 535, 748 N.E.2d 146.
 {¶ 39} Appellant aptly notes, however, that this case involves, and the trial court so found, a lawful detention, not an unlawful detention.[3] Thus, appellant asserts that the proper test is whether, in accordance with general consent to search authorities, the circumstances indicate that the suspect voluntarily consented to the search, rather than whether the suspect was free to leave the scene and possessed knowledge of his right to refuse consent. Again, I agree with the appellant's position. The central issue in the case at bar is whether the appellee voluntarily consented to the search of his person, or whether appellee's consent was the product of duress or coercion, either express or implied.
 {¶ 40} In State v. Dettling (1998), 130 Ohio App.3d 812, 815,721 N.E.2d 449, 451, the court discussed the requirements for valid consent searches:
"When the prosecution seeks to justify a search based on consent, it has the burden of proving `that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.' Id., 412 U.S. at 248, 93 S.Ct. at 2059, 36 L.Ed.2d 875."
 * * *
"Voluntariness is to be determined from the totality of the circumstances. Bustamonte, 412 U.S. at 226, 93 S.Ct. at 2047,36 L.Ed.2d at 862. Among the circumstances to be considered are the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. Id."
See, also, State v. Barnes (1986), 25 Ohio St.3d 203, 495 N.E.2d 922;United States v. Shabazz (C.A. 5, 1993) 993 F.2d 431; United States v.Olivier-Becerril (C.A. 5, 1988), 866 F.2d 424, which list additional factors that may be considered when determining whether a suspect voluntarily consented to a search. Thus, courts must ensure that consent is not the product of police coercion.
 {¶ 41} It is important to again note that the prosecution bears the burden to prove that consent was, in fact, freely and voluntarily given.Dettling, supra; Bumper v. North Carolina (1968), 391 U.S. 543,88 S.Ct. 1788, 20 L.Ed.2d 797; Florida v. Jimeno (1991), 500 U.S. 248,111 S.Ct. 1801, 114 L.Ed.2d 297. The standard for measuring the scope of a suspect's consent under the Fourth amendment is that of "objective" reasonableness — what would a reasonable person have understood by the exchange between the officer and the suspect? Jimeno.
 {¶ 42} Although I agree with the appellant that in the case at bar the trial court articulated the wrong standard in its decision (unlawful detention standard rather than the standard applied to a lawfully detained suspect), I do not believe, after my review of the evidence adduced at the suppression hearing, that the trial court's judgment must be reversed. In my view, the result in this case would be the same under either standard. The trial court ultimately concluded that the appellee did not voluntarily consent to the search of his person. The trial court also correctly noted that in consent to search cases, the prosecution has the burden to justify the warrantless search and seizure. In its decision, the trial court wrote:
"Herein, the totality of the circumstances suggests to the Court that defendant did not consent by an independent act of free will. It might have been helpful to have the videos from the three cruisers present when this incident occurred. Trooper Woodyard testified no one requested that they be preserved, and, therefore, they were destroyed consistent with Highway Patrol policy. The videos of the discussion between Trooper Woodyard and defendant might have added something to the issue of whether the consent expressed by defendant was indeed an independent act of free will. The Court heard the testimony of Trooper Woodyard and was not convinced that it was an act of free will. It is the State's burden to justify a warrantless search and seizure.
The authority for talking to defendant is tenuous at best. At no time was defendant informed there was any focus on him for illegal activity, and that he would have a basis to consent or not consent to a request to search him. He was presented with an overwhelming show of force. There were a number of officers at the scene. Trooper Woodyard ostensibly searching for weapons discovered something other than a weapon. He unconvincingly argues he had consent to go into defendant's pocket to explore for something other than a weapon. The totality of the circumstances fails to indicate an independent act of free will on defendant's part."
 {¶ 43} Thus, the trial court made a factual determination, in light of the paucity of evidence adduced to demonstrate appellee's consent, that the prosecution failed to meet its burden to prove consent. Generally, factual determinations are matters reserved for the trier of fact. Factual determinations regarding a suspect's voluntary consent to search are specifically entrusted and reserved to the triers of fact.Robinette. Appellate courts should defer to the triers of fact in assessing witness credibility and the weight of the evidence. In the case sub judice, my review of the transcript reveals little, if any, evidence to support the appellant's claim that the appellee freely and voluntarily consented to a search of his person. Additional evidence, including the officers' specific and detailed activities during the investigative stop, could have shed more light on this topic. On a largely silent record I cannot conclude that the prosecution satisfied its burden and the trial court erred. Thus, under either standard, I believe that the evidence adduced at the suppression hearing fails to satisfy the prosecution's burden to prove consent.
 {¶ 44} Additionally, I note that the authority to search a motor vehicle's passenger during an investigative stop is limited. For example, the discovery of drugs in a driver's pocket, which may provide a basis to search the vehicle, does not necessarily authorize the search of a passenger absent other factors. See State v. Taylor (2000),138 Ohio App.3d 139, 740 N.E.2d 704. In State v. Isbele (2001),144 Ohio App.3d 780, 784, 761 N.E.2d 697, 701, citing Taylor, supra, the court discussed the issue of a search of passengers during investigative traffic stops:
In the context of passengers of motor vehicles involved in investigatory traffic stops, an officer may order the passengers to get out of the vehicle pending completion of the stop. Maryland v. Wilson
(1997), 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47-48. However, once a passenger has left the vehicle, the officer must possess specific and articulable facts to believe that a passenger is armed and dangerous, or is engaged in criminal activity, to justify any further intrusions. See, e.g., State v. Taylor (2000), 138 Ohio App.3d 139, 145,740 N.E.2d 704, 708-709. For example, furtive movements by a passenger may provide a reasonable basis for an officer to conduct a protective frisk, State v. Williams (1994), 94 Ohio App.3d 538, 544, 641 N.E.2d 239,243, as can an officer's observation of bulges in the passenger's clothing that are indicative of concealed weapons. See Pennsylvania v.Mimms (1977), 434 U.S. 106, 111-112, 98 S.Ct. 330, 334, 54 L.Ed.2d 331,337-338. Where a passenger is cooperative and gives no indication that he is armed and dangerous, an officer may not conduct a protective frisk. See, e.g., State v. Cantelupe (June 28, 2000), Harrison App. No. 99-511CA, unreported, 2000 WL 875356; State v. Caldwell (Sept. 29, 2000), Huron App. No. H-00-13, unreported, 2000 WL 1434118. In addition, where an officer has no reasonable articulable suspicion that a passenger is or has been involved in criminal activity, the officer may not detain the passenger beyond the scope of the original traffic stop. Taylor,138 Ohio App.3d at 146, 740 N.E.2d at 709-710. A passenger's mere propinquity to others in the vehicle whom are independently suspected of criminal activity does not, without more, give reasonable cause to search that person. Id.; State v. Cantelupe; see, also, Ybarra v. Illinois (1979),444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245-246.
In Taylor, an officer initiated a traffic stop of a vehicle after his laser instrument indicated that the vehicle was speeding. Taylor at 142,740 N.E.2d at 706-707. Upon investigation, the officer discovered that the driver's license was suspended and arrested him. Id. While conducting a search of the driver incident to arrest, the officer discovered two grams of marijuana. Id. at 143, 740 N.E.2d at 707. The officer noticed a can of air freshener and a cellular phone in the car and that the car generally `looked lived in.' Id. at 148, 740 N.E.2d at 711. On the basis of his observations and the fact the driver had marijuana on his person, the officer detained the passenger, searched him, and eventually discovered cocaine. Id. at 144, 740 N.E.2d at 707-708. In reversing the trial court's decision denying a motion to suppress, the Second District Court of Appeals rejected the notion that the discovery of a minimal amount of drugs in the possession of one occupant of a vehicle creates a reasonable basis to suspect criminal activity on the part of another. Id. at 147, 740 N.E.2d at 710. The court further concluded that the condition of the interior of the car did not justify a search and detention of its passengers:
`These may be articulable facts but they certainly do not provide reasonable grounds for conducting the search. * * * [I]f a cellular phone in the unkempt passenger compartment of a vehicle constitutes reasonable articulable facts sufficient to justify an investigation of the occupants for drug trafficking, then we are all at risk.' Id. at 148-149,740 N.E.2d at 711.
In this case, Officers Ezerski and Mynhier testified that there was no evidence that appellee was engaged in criminal activity. The officers freely conceded that they believed appellee posed no threat of harm to them. Rather, the officers detained appellee only because they assumed that since the driver of the truck possessed drugs, she must possess them too. Although the officers' assumption proved to be correct, the officers lacked reasonable articulable suspicion to detain or search appellee. The officers had not reason to detain appellee after they arrested the driver of the vehicle. Consequently, the detention of appellee was unreasonable under the circumstances."
See, also, Wyoming v. Houghton (1999), 526 U.S. 295, 119 S.Ct. 1297,143 L.Ed.2d 408. If, however, the drug dog had independently identified the passenger as the possessor of narcotics, a different outcome may have resulted.
 {¶ 45} Accordingly, I agree with the trial court's judgment that the evidence seized in this case must be suppressed.
Kline, P.J.: Concurs in Judgment Only and with Concurring Opinion.
Abele, J.: Concurs in Judgment Only with Concurring Opinion.
[1] {¶ a} The transcript reveals the following response from Trooper Woodyard concerning his actions after the drug dog indicated that narcotics were in the vehicle:
{¶ b} "Then I asked Mr. Winters to exit the vehicle and asked him if he had any weapons, drugs, anything of that nature on him. He said no. I asked him if I could check and he said yes. At that point he began taking stuff from his pockets and showing me what he had in his pockets. Then I began to pat him down. He asked me why I was searching him and I told him that I asked him permission and he gave me permission to do so, and if he didn't want me to continue I could stop. He responded with no, that's okay, I was just asking. Then I felt an item in his pocket that was soft. I didn't know what it was. I asked him what it was. He said it was change in his pocket. I told him it was soft, and that it was not change, and asked him was it was. And he dropped his head and looked away from me. Then he wouldn't respond to anything I said to him after that. I removed an item and it was a mushroom. Shortly after that Sgt. Allwine read Bethany and Michael their constitutional rights."
[2] The trial court's decision states "herein, the totality of the circumstances suggests to us the court that defendant did not consent by an independent act of free will."
[3] I also note that State v. Hatfield (1999), Ross App. No. 98CA2426, cited by the trial court in its decision, involved an unlawful detention scenario.