The STATE of Ohio, Appellee,

v.

PIES, Appellant.

[Cite as *State v. Pies* (2000), 140 Ohio App.3d 535.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000161.

Decided Nov. 17, 2000.

536

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Anita P. Berding,* Assistant Prosecuting Attorney, for appellee.

Christine Y. Jones, for appellant.

*Per Curiam.*

Defendant-appellant Joseph Pies was indicted on December 6, 1999, on one count of possession of a controlled substance in violation of R.C. 2925.11(A). Pies filed a motion to suppress, which challenged the constitutionality of the stop that led to the seizure of drugs from a car in which Pies had been sitting. An evidentiary hearing was held on January 25, 2000.

At the hearing on the motion, Officer Stafford Thompson testified that, at approximately 1:30 a.m. on December 6, 1999, he observed Pies sitting in a parked car with another individual on a residential street in what he described as a "high drug area." Thompson testified that he recognized the passenger as a "known" drug dealer, and that, as a result, he was "suspicious of drug activity." As Thompson approached the car, he observed Pies and the passenger "moving around like they were trying to hide something, trying to get rid of something." Thompson asked Pies to step out of the car for safety reasons because he was concerned that Pies or his companion had hidden a weapon. Thompson patted down Pies and placed him in the back seat of the patrol car. Finding no evidence of weapons, Thompson ran a computer check on Pies's license. After finding that Pies's license was valid, and while Pies was still in the back seat of the patrol car, Thompson began to question Pies. Specifically, Thompson asked Pies the following question: "[C]ome on, man, what are you really doing[?]" Pies responded that he had been buying drugs. Thompson asked if he could pat down Pies again. Pies consented. Finding no evidence of drugs, Thompson then asked for Pies's consent to search the car. Pies consented. Thompson found crack cocaine in the middle console of the car. After that, Thompson read Pies his *Miranda* rights and placed him under arrest.

After hearing Thompson's testimony, the trial court denied the motion. In its ruling, the court stated the following:

"Couple things that due [*sic*] distinguish the case, I think, and that being the hour that it occurred, the neighborhood, the recognition of the passenger as someone involved in prior drug activity. The motion would be denied at this time."

Thereafter, Pies entered a plea of no contest. He was found guilty of possession of a controlled substance and sentenced accordingly. Pies now appeals his conviction, asserting that the trial court erred by failing to grant his motion to suppress. Among the arguments presented by Pies, we find meritorious the one relating to whether the admission by Pies in response to Thompson's question about what he had been doing violated Pies's constitutional rights, and whether the evidence obtained as a result of that admission should have been excluded.

 The trial court assumes the role of the trier of fact in a hearing on a motion to suppress, and it must determine the credibility of the witnesses and weigh the evidence presented at the hearing.[1] A reviewing court must accept those findings of fact if they are supported by competent, credible evidence.[2] But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard.[3]

 The Fourth Amendment, as made applicable to the states by the Fourteenth Amendment, secures the right of individuals to be free from unreasonable searches and seizures. A warrantless seizure is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement.[4] One such exception is an investigative stop. Under this exception, a police officer may stop and detain an individual for investigation purposes if the officer can point to specific, articulable facts justifying the detention.[5] But the scope and duration of an investigatory stop must be no more than necessary to effectuate the initial purpose of the stop.[6] During the stop, an officer may

---

1. See *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

2. See *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908.

3. See *State v. Warren* (1998), 129 Ohio App.3d 598, 601, 718 N.E.2d 936, 938–939, discretionary appeal not allowed (1998), 84 Ohio St.3d 1446, 703 N.E.2d 326; *State v. Curry, supra; State v. Claytor, supra.*

4. See *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585.

5. See *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 905–907.

6. See *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Curry, supra*, at 97, 641 N.E.2d at 1174.

conduct a reasonable protective search for weapons only when the officer reasonably believes that his safety or the public's safety is jeopardized.[7] The propriety of an investigatory stop is viewed in light of the totality of the circumstances.[8]

■ After reviewing the record, we hold that there was competent, credible evidence presented to support the initial stop and pat-down frisk. Specifically, Officer Thompson pointed to a specific articulable justification, including the occupants' furtive movements, the area's reputation for criminal activity, the time of day, and the fact that the passenger was a "known" drug dealer. Moreover, competent, credible evidence was provided to justify the officer's belief that his safety was jeopardized. Based on this, we hold that the stop and pat-down search did not violate Pies's constitutional rights. But the continued detention of Pies in the back of the police cruiser, and particularly the questioning initiated by Thompson, raise separate Fourth Amendment concerns.

■ The duty to advise a suspect of his *Miranda* rights does not arise until there is questioning that rises to the level of a custodial interrogation.[9] A person is considered "in custody" for *Miranda* purposes where there is a formal arrest or equivalent restraint on an individual's freedom of movement.[10] The test to determine whether there has been such a restraint is whether the totality of the circumstances indicates that a reasonable person in the suspect's situation would have believed that he was not free to leave.[11] Moreover, the interrogation must reflect a measure of compulsion above and beyond that inherent in a custodial detention before it will be considered a "custodial interrogation." [12] Under, the totality-of-the-circumstances approach, there must be an inquiry into all the circumstances surrounding the interrogation.[13]

---

7. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus.

8. See *State v. Bobo, supra,* paragraph one of the syllabus.

9. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

10. See *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279–1280.

11. See *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336; *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253, 268.

12. See *Rhode Island v. Innis* (1980), 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307–308; *State v. Knuckles* (1992), 65 Ohio St.3d 494, 605 N.E.2d 54, paragraph two of the syllabus.

13. See *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph three of the syllabus (citing *Florida v. Royer* [1983], 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229).

■ We assume without deciding for the purpose of this appeal that the officer could have placed Pies in the back seat of the police cruiser while running the license check. But once the officer asked Pies what he had been doing in his car, the officer exceeded the scope of the initial stop. At this point, the questioning became equivalent to a custodial interrogation, because Pies was seated in the back seat of the patrol car and was unable to freely leave during the questioning. It is inconceivable that a person in such a situation could have reasonably concluded that he or she was free just to walk away. Further, because Thompson asked Pies what he had been doing in the car, he was specifically eliciting a response. Thompson's question is particularly troubling in light of the fact that he had already conducted a pat-down frisk and performed a license check on Pies and had found nothing to justify further questioning. Because the detention was equivalent to an arrest, we hold that the interrogation was of a custodial nature and that *Miranda* warnings should have been given. Under these circumstances, the statement made to Officer Thompson relating to what Pies had been doing in his car should have been suppressed, and any derivative evidence obtained as a result of that incriminating statement should have been excluded.

■ The exclusionary rule applies not only to primary evidence directly obtained during an illegal search or seizure, but also to derivative evidence, or the fruits of the poisonous tree. In order for derivative evidence to be suppressed, the evidence must have been obtained by exploitation of the illegal search or seizure, and therefore be tainted by it.[14]

■ The state has not demonstrated, and we are not persuaded, that the consent to search the car was an independent act of free will that would have purged the taint of the illegal detention.[15] The request for consent to search the car was obtained during the course of an illegal detention, there was no time lapse between the seizure of Pies and the search of the car, and there was no intervening circumstance that might have broken the connection between the seizure and the ensuing search.[16] Consequently the consent to the search of the car was not voluntary. Given that, the crack cocaine, which was discovered after obtaining Pies's consent to search the car, should have been suppressed because

---

14. See *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455–456; *State v. Warren, supra,* at 606, 718 N.E.2d at 942.

15. See *Florida v. Royer, supra,* at 501, 103 S.Ct. at 1326, 75 L.Ed.2d at 238–239; *State v. Retherford* (1994), 93 Ohio App.3d 586, 596, 639 N.E.2d 498, 505.

16. See *State v. Retherford, supra,* at 602, 639 N.E.2d at 509.

the state did not demonstrate,[17] and we cannot say, that the crack cocaine would have been inevitably discovered,[18] as the officer had no probable cause to arrest Pies. Consequently, the crack cocaine should have been excluded as the tainted fruit of the poisonous tree.

As a result, we hold that the trial court erred, and that the motion to suppress Pies's statement and the crack cocaine seized from his vehicle should have been granted. We, therefore, sustain the assignment of error, reverse the trial court's judgment, and remand this case for further proceedings consistent with this decision and law.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., PAINTER and SUNDERMANN, JJ., concur.

---

**17.** While the state has argued in its brief that even if the search and subsequent consent were improper, the drugs would have inevitably been discovered because they were in plain view, the state withdrew this challenge during oral arguments, and we do not address it here.

**18.** See *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763, syllabus (citing *Nix v. Williams* [1984], 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377).