OPINION
{¶ 1} Defendant-appellant, Jeffrey R. Haslam (Haslam), appeals a decision of the Monroe County Court overruling his motion to suppress evidence. At issue in this appeal is whether the trial court erred in finding that it did not need to address whether an illegal arrest occurred, and whether the trial court erred in holding that Haslam voluntarily consented to a search.
 {¶ 2} On May 31, 2007, Ohio Division of Wildlife officers Mark Smith (Smith), investigator, and Jay Abele (Abele), supervisor, stopped Haslam's vehicle based on an April 22, 2005 warrant for his arrest. (Tr. 12-13, 38.) Smith was familiar with Haslam and his vehicle as a result of a recent undercover investigation. (Tr. 9, 12.) Smith and Abele had the warrant "in hand" at the time of the stop. (Tr. 13, 38.) Upon pulling up beside Haslam's car, Smith informed Haslam that a warrant for his arrest existed and asked him to exit the vehicle. (Tr. 13.) Haslam complied and was cuffed for approximately eight minutes while waiting along the side of the car while Abele proceeded to verify the warrant through the Monroe County sheriff's office. (Tr. 41-42.) The sheriff's office advised that the warrant was recalled. At that time, the officers removed the handcuffs from Haslam. Id.
 {¶ 3} After removing the handcuffs, the officers asked Haslam if he would consent to a search of his residence. (Tr. 33.) Haslam agreed and the officers followed him to his residence. (Tr. 34.) As a basis for this search request, Officer Smith had recently completed an undercover investigation concerning hunting violations and had been in contact with Haslam during the investigation on several different occasions. (Tr. 9-10.) Haslam was considered a target in the investigation. (Tr. 9, 43.) As a result of this investigation, between fifteen and eighteen individuals were charged or searched in accordance with citations and warrants that were issued. (Tr. 10, 44.)
 {¶ 4} Upon arriving at Haslam's home, but prior to commencing the search, Haslam completed a written consent to search form that he voluntarily signed in the presence of Smith and his wife, Danielle Vankirk (Vankirk). (Tr. 35-36.) Abele proceeded to search the home while Smith talked with Haslam and Vankirk. (Tr. 37.) *Page 2 
Abele located deer antlers and turkey beards that did not have tags, seals, or certificates verifying ownership of these parts.
 {¶ 5} On June 4, 2007, the State of Ohio Wildlife Division charged Haslam with the following counts, all in violation of R.C. 1531.02
(state ownership of wild animals): one count possession of turkey beards, a fourth degree misdemeanor; one count failure to wear hunter orange during deer gun season, a fourth degree misdemeanor; and one count possession of five deer parts, a third degree misdemeanor. The state also charged Haslam with one count possession of twelve deer parts in violation of R.C. 1531.07, a fourth degree misdemeanor.
 {¶ 6} On October 17, 2007, Haslam filed a motion to suppress any and all evidence the state intended to use at trial on grounds that such evidence is the "fruit of an unconstitutional search and seizure in violation of the rights guaranteed [Haslam] by the fourth andfourteenth amendments to the United States Constitution and Article One, Sections Ten and Fourteen of the Ohio Constitution."
 {¶ 7} The trial court held a suppression hearing on November 19, 2007. On January 2, 2008, the trial court overruled Haslam's motion to suppress, finding that the court need not rule on the legality of the arrest and that Haslam freely and voluntarily consented to the search of his home.
 {¶ 8} On April 22, 2008, Haslam pleaded no contest to the aforementioned charges and reserved his right to appeal on the motion to suppress issue. The trial court sentenced Haslam as follows: twenty days in jail, with fourteen days suspended; $500.00 fine; $3,000.00 restitution; $82.00 court costs; two years unsupervised probation; lifetime suspension of hunting, fishing, and trapping rights, with the opportunity to petition the court for reinstatement after five years; not permitted to possess any white-tailed deer or turkey parts; not permitted to apply for nor participate in any permit or application issued by the Division of Wildlife; not permitted to be involved with any conservation club, organization or activity sponsored by the Division of Wildlife.
 {¶ 9} Initially, it should be noted that the state has failed to file a brief in this *Page 3 
matter. Therefore, we may accept Haslam's statement of the facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain such action. App. R. 18(C).
 {¶ 10} Haslam's first assignment of error states:
 {¶ 11} "THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS, FINDING THAT IT DID NOT NEED TO ADDRESS THE ISSUE OF AN ILLEGAL ARREST."
 {¶ 12} The standard of review in an appeal of a suppression issue is two-fold. State v. Dabney, 7th Dist. No. 02BE31, 2003-Ohio-5141, at ¶ 9, citing State v. Lloyd (1998), 126 Ohio App.3d 95, 100-101,709 N.E.2d 913. Since the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Winand (1996), 116 Ohio App.3d 286, 288,688 N.E.2d 9, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608,645 N.E.2d 802. However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. Id., citing State v.Clayton (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. This determination is a question of law of which an appellate court cannot give deference to the trial court's conclusion. Id., citingLloyd.
 {¶ 13} Haslam argues that an arrest based on a recalled warrant is an illegal arrest pursuant to State v. Wright (Apr. 28, 1987), 8th Dist. No. 52173. Further, Haslam asserts that an invalid arrest warrant relied upon by a police officer may render an arrest illegal and all evidence secured incident to the arrest excludable under the United States Supreme Court decision in Whiteley v. Warden (1971), 401 U.S. 560,568-569, 91 S.Ct. 1031, 28 L.Ed.2d 306.
 {¶ 14} Haslam asserts, "the officers knew or at the very least had reason to know that the arrest warrant for [him] had been recalled." In support, Haslam argues that Officer Smith checked for the warrant on the Ohio Law Enforcement Gateway website (OHLEG) on December 4, 2006 and at that time, no warrant existed. The *Page 4 
OHLEG website did not reveal a criminal history for Haslam. Haslam alleges that in spite of this information, on May 31, 2007 the officers stopped Haslam's vehicle and placed him in handcuffs for eight minutes while verifying the warrant with the Monroe County sheriff's department. Haslam takes exception to the use of handcuffs, as he disagrees with Officer Smith's characterization of him as a "violent offender" and that the cuffs were necessary for officer "safety." For these reasons, Haslam contends that an illegal arrest occurred on May 31, 2007.
 {¶ 15} In its January 2, 2008 journal entry, the trial court ruled on Haslam's motion to suppress. After conducting a hearing, the court determined it did not need to rule on the legality of the arrest. The court reasoned that Haslam was detained and handcuffed for less than ten minutes while the officers determined whether there was a valid arrest warrant. The trial court considered Officer Smith's and Officer Abele's testimonies that they believed the warrant they possessed at the time of the stop was a valid warrant for Haslam's arrest. (Tr. 13, 38, 45.) The trial court also relied on a tape of the incident that included conversation between Haslam and the officers.
 {¶ 16} The case law cited by Haslam relates to evidence recovered in a search incident to an unlawful arrest. However, that case law is irrelevant to this case because to whatever extent Haslam was "arrested," that arrest ended before the evidence that led to his conviction was recovered. There was no evidence recovered by the officers during that encounter or at that place (e.g., from Haslam's vehicle). After the officers determined that the warrant had been recalled, Haslam was free to go. (Tr. 35.) The evidence that led to his conviction was recovered as the result of the noncustodial consensual search of his home. The consensual search of his home was separate in time and space from the encounter over the arrest warrant.
 {¶ 17} Further, the trial court is in the best position to evaluate witness credibility, and a review of the record indicates that the trial court's determination is supported by competent, credible evidence. Thus, Haslam's first assignment of error is without merit.
 {¶ 18} Haslam's second assignment of error states: *Page 5 
 {¶ 19} "THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS, HOLDING THAT CONSENT TO SEARCH WAS GIVEN VOLUNTARILY."
 {¶ 20} Haslam argues that the evidence seized at his home by the officers is the result of an illegal arrest, and that nothing in the record indicates that his consent to search was an independent act of free will sufficient to purge the taint of the illegal arrest.
 {¶ 21} Haslam asserts that the officers detained and humiliated him on a public street on an invalid warrant, and that "instead of letting [him] leave, the officers continued to question him and requested that they search his house, after he had told them that he was not going home."
 {¶ 22} Haslam also claims that he did not realize that he could have told the officers "no" to their request to search his home because they had just arrested him on a recalled warrant. Haslam alleges that he was handcuffed and not free to leave during the "majority of the questioning."
 {¶ 23} It has already been determined under the first assignment of error that the earlier detainment of Haslam had ended, thus the evidence recovered from his home was not seized as a result of an illegal arrest. However, assuming arguendo that the detainment of Haslam constituted an illegal arrest, then, according to Haslam, any evidence seized by consent after the illegal arrest should be suppressed unless it can be shown that the consent to search was an independent act of free will that would purge the taint of an illegal detention.
 {¶ 24} In support of this assertion, Haslam relies on State v.Pies (2000), 140 Ohio App.3d 535, 541, 748 N.E.2d 146 541, but his reliance is misguided. In Pies, an officer conducted an investigatory stop where he patted down Pies and placed him in the back seat of the patrol car. Id. Finding no evidence of weapons, the officer ran a computer check on Pies's license. Id. After finding that Pies's license was valid, and while Pies was still in the back seat of the patrol car, the officer began to question Pies. Id. The court found that the "stop and pat-down search" did not violate Pies's *Page 6 
constitutional rights. Id. at 540. However, the continued detention of Pies in the back of the police car, and the questioning initiated by the officer while Pies was detained in the back of the vehicle raised separate Fourth Amendment concerns because Pies was unable to freely leave during the questioning. Id.
 {¶ 25} The exclusionary rule applies not only to primary evidence directly obtained during an illegal search or seizure, but to derivative evidence, or the fruits of the poisonous tree, as well. Id. In order for derivative evidence to be suppressed, the evidence must have been obtained by exploitation of the illegal search or seizure, and therefore be tainted by it. Id., citing Wong Sun v. United States (1963),371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441; State v. Warren (1998),129 Ohio App.3d 598, 606, 718 N.E.2d 936.
 {¶ 26} The Pies court concluded that the consent to search the car was not an independent act of free will that would have purged the taint of the illegal detention. Pies at 541. The request for consent to search the car was obtained during the course of an illegal detention, there was no time lapse between the seizure of Pies and the search of the car, and there were no intervening circumstances that might have broken the connection between the seizure and the ensuing search. Id. Consequently, Pies's consent to the search of the car was not voluntary. Id.
 {¶ 27} This case can be distinguished from Pies. First, this stop was based on a warrant and not an investigatory Terry stop as inPies. See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. The record reveals that once the officers determined that the warrant was recalled, Haslam was free to go and the officers removed the handcuffs. (Tr. 35, 41, 42, 46.) Therefore, Haslam inaccurately portrays that he was in handcuffs for the majority of the questioning. Instead, he was only in handcuffs long enough for the officers to confirm the validity of the warrant. (Tr. 14.) Officer Smith testified that Haslam "was obviously uncuffed before we asked him to go to the house, because Officer Abele came back, uncuffed him and then you can hear Officer Abele's voice [on the digitally recorded file]." (Tr. 42.) Thus, Haslam was not handcuffed when the officers asked to search his home. *Page 7 
 {¶ 28} After the officers uncuffed him, Haslam continued in a conversation with the officers regarding deer, hunting, and a car crash involving his brother. (Tr. 46.) Officer Smith testified that Haslam did not indicate that he wanted to stop the conversation at that point. (Tr. 46.) Haslam agreed to allow the officers to search his home and allowed the officers to follow him in their separate vehicle to his home. Upon arrival at his home, Haslam executed a written consent to search.
 {¶ 29} Based on the facts presented, even if the court determined that the officers illegally arrested Haslam, he has failed to illustrate how his consent to search, orally and in writing, was anything other than an act of free will. Clearly, the facts show that the request for consent to search the car was obtained during a point when Haslam was free to go, there existed a lapse of time between the detainment of Haslam and the search of the house, and there were intervening circumstances that broke the connection between the "seizure" and the search of his home. Accordingly, Pies is inapposite.
 {¶ 30} After finding that it need not address the issue of illegal arrest, the trial court overruled Haslam's motion to suppress based on its conclusion that "[u]nder the totality of the circumstances set forth in United States v. Mendenhall, 446 U.S. 544, the court finds that [Haslam] freely and voluntarily consented, first verbally and then in writing." The trial court considered Haslam's agreement to take the officers to his residence after being released from handcuffs, and the fact that Haslam traveled in his own car to his residence and then executed a written consent to search.
 {¶ 31} In Mendenhall, the United States Supreme Court considered a situation in which a respondent consented to accompany Drug Enforcement Administration agents for questioning and a search in an airport.United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497. The question before the court was whether the respondent's consent to accompany the agents was in fact voluntary or was the product of duress or coercion, express or implied. Id. at 557. The Court determined that this should be decided based on the totality of all the circumstances, and is a matter which the government has the burden of proving. Id., citing *Page 8 Schneckloth v. Bustamonte, 412 U.S. 218, 222, 227, 93 S.Ct. 2041,36 L.E.2d 854, citing Bumper v. North Carolina, 391 U.S. 543,88 S.Ct. 1788, 20 L.Ed.2d 797.
 {¶ 32} Here, the evidence showed that the officers did not tell Haslam that he had to allow the search of his home, but was instead asked by the officers if he would consent to a search of his home. SeeMendenhall at 558. There is no evidence of threats or a show of force. Id. Further, Haslam was questioned briefly and was not handcuffed when the officers asked to search his home. Id.
 {¶ 33} Haslam also argues that he didn't feel as though he could say no to the officers because he had just been handcuffed and questioned prior to their request. However, Mendenhall determined that such factors are not irrelevant, but they are not solely decisive where the "totality of evidence" was "plainly adequate" to support a lower court's finding that an individual voluntarily consented to accompany officers to be questioned or searched. Id., citing Schneckloth at 226.
 {¶ 34} Once again, the trial court's determination is supported by competent, credible evidence. Additionally, based on the foregoing review of the applicable law, Haslam's second assignment of error is without merit.
 {¶ 35} The trial court decision is hereby affirmed.
Vukovich, P.J., concurs.
 Waite, J., concurs. *Page 1