The STATE of Ohio, Appellee,

v.

ROE, Appellant.

[Cite as *State v. Roe,* 164 Ohio App.3d 733, 2005-Ohio-6655.]

Court of Appeals of Ohio,
Fifth District, Coshocton County.

No. 05 CA 1.

Decided Dec. 15, 2005.

734

Robert Batchelor, Coshocton County Prosecuting Attorney, for appellee.

Robert E. Calesaric, for appellant.

___

WISE, Judge.

{¶ 1} Appellant, Walter B. Roe Jr., appeals the denial of his motion to suppress in a marihuana cultivation case in the Coshocton County Court of Common Pleas. The relevant facts leading to this appeal are as follows.

{¶ 2} On the afternoon of February 23, 2004, a mobile home fire was reported on County Road 51 in a rural area of Bedford Township, Coshocton County. Jeffrey Corder, a fire prevention officer for the city of Coshocton and a commissioned deputy with the Coshocton County Sheriff's Department, was called to the scene to investigate. When he arrived, firefighters from the Walhonding Valley Fire District had already responded and put out the fire. The mobile home was destroyed and still smoldering. A second mobile home, which appeared undamaged on the outside from the fire, sat about 50 to 75 feet from the burned mobile home.

{¶ 3} Corder was unable to ascertain the cause of the mobile home fire. While assessing the damage, he noticed some fluorescent "grow lights" and potting soil in the remains of the first mobile home. He thereupon contacted the Coshocton County Prosecutor's Office. Detective Randy West, along with Prosecuting Attorney Robert Batchelor, soon arrived on the scene. Detective West additionally noticed two potted plants in the remains, which his training and experience indicated were marihuana plant stems. Detective West could not see inside the second mobile home. He described the overall parcel of property as basically a muddy patch with a primitive driveway, with the two mobile home sites lacking dividers, sidewalks, or fences.

{¶ 4} Meanwhile, Corder walked around the whole perimeter of the unburned mobile home. He could not see inside the windows either due to their height or their coverings. He saw no sign of fire or smoke outside the mobile home, nor was the structure hot to the touch. However, Corder noted that the electrical connections for both mobile homes appeared to go to a single electric box containing tripped breakers. He eventually decided to enter the second mobile

home, which was closed up with a single weak door lock. He walked into the second mobile home, briefly looked in both directions, and detected no sign of smoke or smoldering fire. However, he did observe a green leafy substance, apparently marihuana, on the floor.

{¶ 5} Detective West thereupon began preparing search-warrant paperwork. He was unable to obtain an address for the property at the scene, because there were no number markers or mailboxes. With the help of the County Engineer's Office, West listed the address as 21793 C.R. 51, although that house number was later determined to be incorrect. Deputies thereupon obtained the warrant and executed a search of the second mobile home. They discovered more than 3,555 grams of marihuana, including 18 live plants, inside the mobile home.

{¶ 6} On March 29, 2004, appellant was indicted on one count of illegal cultivation of marihuana, R.C. 2925.04, a felony of the third degree. Appellant pleaded not guilty and filed a motion to suppress the results of the search of the undamaged mobile home. A hearing was conducted on July 23, 2004. On August 25, 2004, the trial court denied the motion to suppress, making the following pertinent findings.

{¶ 7} "The court finds that the initial entry in the unburned trailer by firefighter Corder was reasonable under the circumstances and was a reasonable attempt to verify that there had been no extension of the fire which had obviously destroyed the burned trailer located nearby."

{¶ 8} Judgment Entry, August 25, 2004, at 1.

{¶ 9} Appellant thereafter entered a plea of no contest and was found guilty as charged. He was later sentenced to one year in prison.

{¶ 10} On January 13, 2005, appellant filed a notice of appeal. He herein raises the following sole assignment of error:

{¶ 11} "I. The trial court erred in not granting appellant-defendant's motion to suppress the search and search warrant."

I

{¶ 12} In his sole assignment of error, appellant contends that the trial court erred in denying his motion to suppress. We disagree.

{¶ 13} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141;

*State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and that it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger*, supra.

{¶ 14} In the case sub judice, we find that appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress; thus, in analyzing the sole assignment of error, we will independently determine whether the facts meet the appropriate legal standard.

{¶ 15} The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The United States Supreme Court has held that " '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " (Brackets sic.) *Payton v. New York* (1980), 445 U.S. 573, 589–590, 100 S.Ct. 1371, 63 L.Ed.2d 639, quoting *Silverman v. United States* (1961), 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734. However, the Ohio Supreme Court has recognized that exigent circumstances may justify warrantless searches by fire officials. See *State v. Grant* (1993), 67 Ohio St.3d 465, 470, 620 N.E.2d 50. " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 57 L.Ed.2d 290, quoting *Wayne v. United States* (C.A.D.C.1963), 318 F.2d 205, 212. The burden is upon the state to overcome the presumption that warrantless searches of homes are per se unreasonable by demonstrating that the search fell within one of the well-recognized exceptions to the warrant requirement. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252.

{¶ 16} In the case sub judice, appellant correctly points out that Corder's entrance into the second, unburned mobile home took place as much as two hours after firefighters first arrived on the scene, and well after the fire at the first mobile home was contained. Furthermore, there was no sign of fire damage or

smoke on or about the unburned mobile home. Also, appellant called as his expert witness Thomas J. Peterson, an experienced certified fire investigator. Peterson opined that there was "no reason to go into the unburned trailer," based on his own review. Based on his review of the photographs of the scene and the various written reports, he found "no indication that the power somehow jumped from the breaker * * * for the burned trailer to the breaker for the unburned trailer." He also expressed his concern that if Corder was indeed doing a normal investigation of the unburned trailer, he should have examined the main electric panel, the subpanel, and all of the switches and outlets.

{¶ 17} In essence, appellant accordingly maintains that Corder's actions, especially with a detective and prosecutor waiting nearby, constituted a pretextual search that should have been suppressed and that resulted in a flawed search warrant.

{¶ 18} Nonetheless, we note that Corder, a 24–year–veteran in firefighting, testified that "it appeared to me that the electrical connections for both mobile homes was at a pole that was setting [sic] outside the unburnt mobile home." At the time, he could not be certain where the wires went once they left the breaker box and disappeared underground, but he recalled the breakers being tripped when he observed them. He continued: "Well, I don't know what caused the breakers to trip. With the electricity and fire it's kind of like with the chicken and the egg thing; which came first? What I always do is err on the side of caution and I make sure that whatever else might be powered from those circuits do not have any type of problems as well. If I'm in an apartment building and it has two or three apartments and we have multiple breakers tripped, we examine the other for extension of fire to make sure that we are not leaving a scene that is still burning." Even though Corder had been there for roughly 45 minutes prior to entering the unburned mobile home, he believed that this was still a window of time during which an electrical fire could still have been smoldering inside. He denied entering the unburned mobile home for any reason other than to check for fire.

{¶ 19} We hold, under the facts and circumstances presented, that the state sufficiently demonstrated that the search fell within an "exigent circumstances" exception to the warrant requirement. *Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252. Accordingly, despite the mistaken house number for the property in the warrant paperwork and the further lack of specificity as to the owners of the vehicles at the site and the real estate upon which the mobile homes were situated, we conclude that the subsequent search warrant was valid and that the motion to suppress was properly denied.

{¶ 20} Appellant's sole assignment of error is overruled.

{¶ 21} For the foregoing reasons, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is hereby affirmed.

Judgment affirmed.

FARMER, J., concurs.

GWIN, P.J., dissents.

GWIN, Presiding Judge, dissenting.

{¶ 22} I respectfully dissent from the majority's disposition of this case.

{¶ 23} A burning building presents an exigency of sufficient proportions to render a warrantless entry reasonable. *Michigan v. Tyler* (1978), 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Steigler v. Anderson* (C.A.3, 1974), 496 F.2d 793, 795; *United States v. Green* (C.A.5, 1973), 474 F.2d 1385, 1389.

{¶ 24} However, six years later, in *Michigan v. Clifford* (1984), 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477, the Supreme Court limited its holding in *Tyler* as follows:

{¶ 25} "The object of the search is important even if exigent circumstances exist. Circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined. If, for example, the administrative search is justified by the immediate need to ensure against rekindling, the scope of the search may be no broader than reasonably necessary to achieve its end. A search to gather evidence of criminal activity not in plain view must be made pursuant to a criminal warrant upon a traditional showing of probable cause." Id. at 293–295, 104 S.Ct. 641, 78 L.Ed.2d 477.

{¶ 26} In the case at bar, the fire did not take place in the dwelling that officials later searched, as was the case in *Tyler*. Rather, the fire took place 50 to 75 feet away from the searched dwelling and some two hours after the fire had been extinguished. Thus, there was never an "entry to fight a fire" as in *Tyler*. The initial exigency of fighting a fire inside the dwelling that permitted a warrantless entry in *Tyler* is nonexistent in this case.

{¶ 27} The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.

{¶ 28} Interestingly, none of the firefighters on the scene found it necessary to enter the second mobile home to search for an extension of the fire. Additionally,

Corder had time to call the prosecuting attorney before entering the second mobile home. Accordingly, he clearly had time to attempt to contact the owner of the second mobile home or to obtain a warrant before entering the second mobile home.

{¶ 29} This case does not present an issue as to the need to protect or preserve life or avoid serious injury. Accordingly, I would find that there was no exigency or emergency to justify what would be an otherwise illegal search. Accordingly, I would sustain appellant's sole assignment of error.