OPINION *Page 2 
{¶ 1} Appellant appeals her conviction and sentence entered in the Licking County Court of Common Pleas on one count of Aggravated Possession of Drugs (Methamphetamine), one count of Aggravated Possession of Drugs (Percocet), one count of Possession of Marijuana, one count of Possession of Drugs (Xanax/Alprazolam) and one count of Possession of Drugs (Valium/Diazapam).
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On March 1, 2006, Officer Wells was working in a plain-clothes detail carrying a firearm. Jeffrey Metz had an outstanding warrant for his arrest and was purportedly living at 291 Clinton St., Newark, Ohio. Officer Wells, along with Officer Jon Purtee, went to the home at approximately 12:30 a.m. looking for Mr. Metz. Officer Wells walked up to the porch, knocked and was greeted by the Appellant Teresa Boone, the resident of the home. After being informed as to why the officers were there, Appellant told Officer Wells that Mr. Metz no longer lived there but provided addresses of potential residences. The officers left shortly thereafter looking for Mr. Metz.
 {¶ 4} Within the hour the officers received additional information from Officer Anderson with the Newark Police Department, that Mr. Metz was back at 291 Clinton Street house.
 {¶ 5} At approximately 1:30 a.m., Officer Wells headed back to such address and again engaged the Appellant on her front porch. After a brief conversation, Appellant verbally consented and allowed Officers Wells and Purtee to enter her *Page 3 
home to look for Mr. Metz. Appellant opened the door, pushing her dog back inside and, when asked, stated, "sure, come on in". At no time were the officer's weapons drawn, nor were promises or threats made in order to gain entry. (Tr. at 22-24).
 {¶ 6} Once inside, Officer Wells was able to discern the general layout of the interior of the two-story home. With the help of Sgt. Haren and Officer Eskins, the interior was searched looking for Mr. Metz. Ultimately, Mr. Metz was not found inside, however, during the search, Officer Wells observed, in plain view, a bong next to the couch in the living room and suspected methamphetamine and pipes on top of a dresser in a downstairs bedroom. (Tr. at 25-35).
 {¶ 7} Appellant was asked to accompany Officer Wells in the bedroom where the contraband was found. Officers Wells informed Appellant about the items he observed and, as such, the high probability of obtaining a search warrant. However, Officer Wells asked for consent instead. (T. at 38-42.) At the same time and prior to obtaining said consent, Officer Wells informed the Appellant there was a good chance she might also be arrested as a result. Additionally, Officer Wells provided a written consent form for Appellant's review, read the document to her and informed her of the right to refuse. Appellant signed the form and went back to the living room observing the approximate thirty-minute search.
 {¶ 8} While in the bedroom, prior to providing consent, Appellant admitted the contraband found in the home was hers. (Tr. at 37-39.)
 {¶ 9} Appellant was indicted March 10, 2006 for Aggravated Possession of Drugs (Methamphetamine), in violation of O.R.C. § 2925.11(A)(C)(1)(c), felony of the second degree; Aggravated Possession of Drugs (Percocet), in violation of *Page 4 
R.C. § 2925.11(A)(C)(1), felony of the fifth degree; Possession of Marijuana, in violation of R.C. § 2925.11(A)(C)(3)(c), felony of the fifth degree; Possession of Drugs (Xanax/Alprazolam), in violation of R.C. § 2925.11(A)(C)(2)(a), misdemeanor of the third degree; and Possession of Drugs (Valium/Diazepam), in violation of R.C. § 2925.11(A)(C)(2)(a), misdemeanor of the third degree.
 {¶ 10} Appellant entered pleas of not guilty to such charges in the indictment.
 {¶ 11} Appellant filed a motion to suppress said evidence. The basis for Appellant's motion being that: the search of her residence was in fact a warrantless, pre-textual search for drugs, and her consent to the search was involuntary.
 {¶ 12} On June 12, 2006, the trial court held a hearing on Appellant's motion to suppress.
 {¶ 13} On June 28, 2006, the trial court entered an order denying Appellant's motion to suppress as the court found that the officers were consensually granted access to Appellant's residence, that the contraband was in plain sight, and its criminal nature was readily apparent.
 {¶ 14} This matter came for trial on August 18, 2006. Prior to the commencement of such trial, Appellant changed her previously entered pleas of not guilty to ones of no contest and was sentenced on all counts.
 {¶ 15} This matter is now before this Court for consideration. Appellant's Assignments of error are as follows:
 ASSIGNMENTS OF ERROR {¶ 16} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE. *Page 5 
 {¶ 17} "II. THE TRIAL COURT ERRED WHEN IT FORFEITED APPELLANT'S MONEY THAT WAS NOT PROVEN TO BE CONTRABAND."
 I. {¶ 18} In her first assignment of error, Appellant claims the trial court erred in denying her motion to suppress. We disagree.
 {¶ 19} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93,96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; State v.Guysinger (1993), 86 Ohio App.3d 592.
 {¶ 20} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 21} Specifically, Appellant maintains that her consent was not voluntarily given and that the officers failed to advise her of her Miranda rights.
 {¶ 22} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable *Page 6 
searches and seizures of persons or their property. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews
(1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. However, it is well-established a defendant waives his or her Fourth Amendment protection by consenting to a warrantless search. State v. Barnes
(1986), 25 Ohio St.3d 203, 208, 495 N.E.2d 922, citing Davis v.United States (1946), 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453,Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854, State v. Pi Kappa Alpha Fraternity (1986),23 Ohio St.3d 141, 491 N.E.2d 1129. "The standard of proof to show a waiver ofFourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent." Barnes, supra, at 208-209, citing Schneckloth, supra, andUnited States v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497.
 {¶ 23} "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth andFourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Schneckloth v. Bustamonte (1973), 412 U.S. 218,248-49 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875. *Page 7 
 {¶ 24} Important factors for a court to consider in determining whether consent is voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence. See Schneckloth, 412 U.S. at 248-249; see, also, State v. Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 14; State v. Dettling (1998), 130 Ohio App.3d 812, 815-816,721 N.E.2d 449.
 {¶ 25} Appellant argues that "the late hour of the search, the repeated contacts with the police in the early morning hours, the manner in which the male officers contained and questioned her in a small confining bedroom, the fact that Appellant was alone with the two officers, the fact that Appellant was not advised of her constitutional rights until after the search had been completed" all contribute to a "finding that her consent and confession were not voluntary." (Appellant's brief at 12-13).
 {¶ 26} In the case sub judice, the record establishes that the officers initially made contact with Appellant on the front porch of the residence. The officers asked if they could enter the residence and look for a suspect. (Tr. at 22-24). Appellant was never in custody or placed in handcuffs prior to giving her consent to the search. Appellant provided consent both verbally and in writing after being advised that she may be arrested and that she had a right to refuse same. (Tr. at 36, 38-42). Appellant was in her own home, not a police station or interrogation room. Additionally, Appellant is not a "newcomer to the law", having a prior criminal history. *Page 8 
 {¶ 27} Accordingly, the record contains competent, credible evidence in the form of the testimony of the officers who responded to the scene that Appellant voluntarily consented to the search of her home.
 {¶ 28} We further find that it was not error for the police to not advise her of her Miranda rights as she was not in custodial detention.
 {¶ 29} Appellant further argues that officers had no legal reason to enter her residence and that the reason for the return to her house was purely pre-textual, based upon information given to the police by a confidential informant that illegal drugs were being sold at the house.
 {¶ 30} Based upon the facts presented, we conclude that Appellant did voluntarily consent to the search. Regardless of any ulterior motive (to look for evidence of drug usage), the officers' stated purpose (to look for Mr. Metz) was not deceptive, in and of itself. State v.Eastman, Guernsey App. No. 05CA000030, 2005-Ohio-6624. Appellant was free to deny entrance if she so chose. Once the officers entered the residence, the drugs were in plain view.
 {¶ 31} Having concluded that the officers' entry into Appellant's resident was lawful, we find that the plain-view doctrine applies and that the search and seizure of the evidence was not in violation of Appellant's Fourth Amendment rights.
 {¶ 32} Appellant's first Assignment of Error is denied.
 II. {¶ 33} In her second assignment of error, Appellant argues that the forfeiture of the $75.00 in this case was error. We agree. *Page 9 
 {¶ 34} The State of Ohio, in its brief, concedes that "absent the necessary hearing (and finding of sufficient nexus), . . . [State of Ohio] concede[s] the $75.00 forfeiture was erroneous."
 {¶ 35} Appellant's second assignment of error is sustained.
 {¶ 36} The judgment of the County Court of Common Pleas, Licking County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
 Wise, J. Hoffman, P. J., and Delaney, J., concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
 Costs to be split equally between the parties. *Page 1