[Cite as *State v. MacKenzie*, 2011-Ohio-4966.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 11-CA-7 |
| SHANE MACKENZIE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of
Common Pleas Case No. 04CR-I-02-084


JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:     September 28, 2011


APPEARANCES:

For Plaintiff-Appellee:               For Defendant-Appellant:

CAROL HAMILTON O'BRIEN 0026965     BRIAN G. JONES 0081724
Delaware County Prosecutor             2211 U.S. Highway 23 North
140 N. Sandusky Street                 Delaware, Ohio 43015
Delaware, Ohio 43015

GREGORY A. TAPOCSI 0084069
Assistant County Prosecutor
(Counsel of Record)

*Delaney, J.*

{¶1} Defendant-Appellant Shane T. Mackenzie appeals from the judgment of the Delaware County Court of Common Pleas, convicting him of one count of illegal cultivation of marijuana, a felony of the fifth degree, in violation of R.C. 2925.04(A), one count of possession of marijuana, a felony of the fifth degree, in violation of R.C. 2925.11(A), and one count of illegal possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1).

{¶2} On appeal, Appellant argues the trial court erred in denying his motion to suppress evidence obtained as a result of a warrantless entry in his home and further, that statements obtained from Appellant were made in violation of *Miranda.*

{¶3} On February 3, 2010, Deputy Ron Vogel of the Delaware County Sheriff's Department, responded to a daytime burglary in progress at 1354 Bunty Station Road, Delaware, Ohio. According to Deputy Vogel, there had been a rash of daytime burglaries in the area recently. Upon arriving at the scene, Deputy Vogel determined that the burglary had just occurred while the occupants momentarily left their residence. He began to patrol the immediate area to look for suspicious activity such as open garage doors, or vans backed into driveways. In his experience, these two acts are indicative of daytime burglaries that occur close in time. He traveled west on Bunty Station Road for approximately two miles, where he observed at 3645 Bunty Station Road, open garage doors, a vehicle backed up to the garage doors, gas cans in the front yard, and a lawn mower (or snow blower) outside of the home.

{¶4} Deputy Vogel decided to approach the residence to see if anything illegal was occurring. Upon approaching the residence, he noticed a broken, unplugged

television inside the front door of the home.  He also noticed clothing scattered on the stairs leading up to the second floor of the home.

{¶5}    Immediately, he contacted the dispatcher to ask for backup, and advised that there was a possible burglary in progress at 3654 Bunty Station Road.  He then knocked loudly on the door and did not receive a response from anyone in the home.

{¶6}    Another deputy arrived and the officers again announced their presence. They waited 20 seconds and also threatened the use of a K9 unit.  After waiting approximately 20 seconds again, the officers opened the door, conducted a protective sweep of the residence with weapons drawn for officer safety.  The sweep lasted approximately 13 minutes.  The officers noted that the home was in disarray, clothing was scattered everywhere, and kitchen cabinets and drawers were open.  Deputy Vogel also noticed what appeared to be marijuana in the family room and one of the bedrooms.  The deputies also discovered a marijuana growing operation in the basement of the home.

{¶7}    Deputy Vogel advised dispatch to contact the residents of 3654 Bunty Station Road to inform them that their home had been burglarized.  He also contacted the Delaware County Drug Task Force to advise the on-call officer of the marijuana cultivation operation in the basement of the residence.

{¶8}    Detective Shawn Wade of the task force arrived at the residence.  The officers determined that they needed to secure a search warrant.  Approximately one hour later, Appellant arrived at the residence with his girlfriend, Kathleen O'Dell. Deputies walked the two through the residence to determine if any of their property had been taken.  They walked through and advised the officers that there was no burglary at

the home; they just kept their house messy. After the walk through, Appellant and Ms. O'Dell were asked to stay in the foyer of the residence while the search warrant was obtained. Detective Wade informed the two that they were free to leave at any time, although Appellant testified he did not recall him saying so.

{¶9}   The two became impatient, asking the officers if there was any way to "just get this over with." Detective Wade informed them that they could give permission to search the residence. He indicated, though, that it would be his preference to wait for the search warrant. [1]   Appellant and O'Dell then indicated they would consent to a search of their residence. Detective Wade explained the Delaware County Sheriff's Office Consent form. They both provided written consent to search the home. The officers then confiscated the marijuana growing operation in the basement.

{¶10}  The Delaware County Grand Jury indicted Appellant in March, 2010, on one count of cultivation of marijuana, a felony of the fifth degree, in violation of R.C. 2925.04(A), one count of possession of marijuana, a felony of the fifth degree, in violation of R.C. 2925.11(A), and one count of possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1).

{¶11}  Prior to trial, Appellant filed a motion to suppress, arguing that Deputy Vogel had no legal basis to enter his home and also that any statements made by Appellant were obtained in violation of his right against self-incrimination and his right to counsel. The trial court denied the motion after hearing. Thereafter, Appellant pled no contest to the indictment. Appellant was sentenced to two years of community control.

{¶12}  This appeal follows, and Appellant raises two Assignments of Error:

---

[1] The record reflects the search warrant was ultimately denied by a judge of the Delaware County Municipal Court.

{¶13} "I. THE TRIAL COURT WAS BARRED BY THE DOCTRINE OF RES JUDICATA FROM OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS.

{¶14} "II. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS."

I & II

{¶15} In Appellant's assignments of error, he argues that the trial court erred in denying his motion to suppress.

{¶16} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶17} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v.*

*Fanning* (1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶18} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507. The exigent circumstances exception has been recognized in situations of hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, and risk of danger to the police and others. *United States v. Rohrig,* 98 F.3d 1506, 1515 (6th Cir. 1996). Exigent circumstances justify a warrantless entry into a residence only when there is also probable cause to enter the residence. *United States v. Johnson*, 9 F.3d 506, 509 (6th Cir. 1993)(citation omitted). The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Id.

{¶19} Consent searches are also part of the standard investigatory techniques of law enforcement. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 231, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854, 865.

{¶20} First, Appellant argues that the trial court should have determined that the doctrine of res judicata renders the consent search invalid because the municipal court declined to approve the task force's request for a warrant.

{¶21} First, we would note that res judicata does not appear to be the proper mechanism through which to challenge the trial court's ruling in the case at bar. Res judicata applies to a valid, final judgment on the merits. The Supreme Court of Ohio has defined a valid final judgment as follows: "'[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' *Grava* further noted that 1 Restatement of the Law 2d, Judgments (1982), Comment b to Section 24, defined 'transaction' as a 'common nucleus of operative facts.' Id. at 382, 653 N.E.2d 226. The Sixth Circuit Court of Appeals construed *Grava* as setting forth the following requirements for the issue-preclusion prong of res judicata: '(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.' *Hapgood v. Warren* (C.A.6, 1997), 127 F.3d 490, 493." *Portage Cty. Bd. Of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶84.

{¶22} The record lacks any indication as to why the municipal court denied the warrant. There were no findings of fact or conclusions of law contained within the municipal court's entry. Moreover, Appellant presents no law that indicates that the denial of a search warrant is a final appealable order which would lead to the invocation of the doctrine of res judicata in subsequent proceedings. See *Ohio EPA v. Ross Incineration Services, Inc.* (1989), 63 Ohio App.3d 648, 579 N.E.2d 758 (denial of motion to quash search warrant not final appealable order).

{¶23} There is simply no indication as to why the search warrant was denied or what parties were involved in the request for the warrant or indication that an actual hearing took place.

{¶24} Neither *State ex rel. Rose v. Ohio Dept. of Rehab & Corr.* (2001), 91 Ohio St.3d 453, 2001-Ohio-95, 746 N.E.2d 1103, or *Kelm v. Kelm*, 92 Ohio St.3d 223, 2001-Ohio-168, 749 N.E.2d 299, cited by Appellant in support of his argument, are analogous to the case at bar. *Rose* involved ODRC's ability to challeng a ruling by the State Personnel Review Board in a civil services case and *Kelm* focused on whether res judicata applied to an arbitration clause in a child custody case. Neither deal with criminal matters, and specifically whether the denial of a search warrant constitutes a final appealable order.

{¶25} Finding that res judicata is not properly invoked in the present case, Appellant's first assignment of error is overruled.

{¶26} Turning to his second assignment of error, we do not find that the trial court erred in denying the motion to suppress.

{¶27} We look at two separate search theories in making our determination. First, we must determine whether exigent circumstances existed by which Deputy Vogel could initially enter Appellant's home. Exigent circumstances exist, under an objective standard, when the totality of the circumstances known to an officer gives rise to a reasonable belief that immediate entry is necessary. *State v. Simpson*, 5th Dist. No. 07-CA-0002, 2008-Ohio-632. This Court has held that "'[a]n important factor in determining whether exigent circumstances exists is the gravity of the underlying offense. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732.' *State v. Keith*, 2nd Dist. No. 22354, 2008-Ohio-4326, ¶ 7". *State v. Channell*, 5th Dist. No. 10-CA-48, 2010-Ohio-6566, ¶12. Additional factors the court may consider to determine if exigent circumstances exist include, "(1) whether the offense is a crime of violence; (2) whether it is reasonably believed that the suspect is armed; (3) whether there is strong reason to believe that the suspect is on the premises; and (4) whether it is likely that the suspect will escape if not swiftly apprehended." *State v. Thomas*, 5th Dist. No. 09-CA-106, 2010-Ohio-4627, ¶29.

{¶28} In the present case, burglary, a felony of the second or third degree, is a serious offense. Initially, Deputy Vogel was investigating a burglary in progress down the road from Appellant's home. Upon determining that the burglary was "fresh", i.e., that it had just occurred during the middle of the day while the occupants stepped out momentarily, Deputy Vogel determined that he should begin canvassing the area to see if another burglary might be in progress. He had been investigating a string of daytime burglaries in the area and thought the suspect(s) may still be in the vicinity. He then

came across a house, two miles down the road, that appeared to be being burglarized based upon conditions outside the home.

{¶29} Upon approaching the home, he noticed a broken television unplugged and laying on the floor inside the front door, the house appeared to have clothes strewn around it, and there was equipment outside in the middle of the winter. There was a van backed up to the garage and no occupants to be seen.

{¶30} Deputy Vogel called for backup and when they arrived, the police announced their presence, did not get a response, and conducted a tactical sweep of the home, which was unlocked. The goal of the sweep was to look for persons in the home.

{¶31} Upon entering the home, the officers noticed marijuana in two of the rooms, found the kitchen cabinets and drawers opened, and found a marijuana cultivation operation in plain view in the basement.

{¶32} Merely because this residence was not the residence that Deputy Vogel was initially called to respond to is inconsequential to our ultimate analysis. To preclude an officer from investigating what looks to be a burglary in progress would impede the police from being able to protect the public and adequately do their jobs. To prohibit an officer from responding to a potential crime in progress because they were not specifically called to that scene would allow an offender free reign to complete a crime without interference as long as the police were not called to the residence that the burglar was terrorizing.

{¶33} Moreover, this Court has held that the exigent circumstances doctrine is applicable to entry at residences in close proximity to the location of the reporting

residence. See *State v. Roe*, 164 Ohio App.3d 733, 2005-Ohio-6655, 843 N.E.2d 1249; see also *State v. Tucker*, 2nd Dist. No. 2009 CA 82, 2010-Ohio-3920. ¶20 (holding that exigent circumstances existed to allow officers to enter home next to residence where armed robbery occurred where doors to trailer were open).

{¶34} We find that exigent circumstances existed, permitting Deputy Vogel to enter the residence to check for possible suspects or victims inside the residence.

{¶35} Moreover, we find Appellant's consent to have been a valid waiver of his right to have the officers procure a search warrant to survey his home. This Court has held the following factors to be important in determining whether a consent to search is valid: "(1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a 'newcomer to the law'; and (7) the suspect's education and intelligence." *State v. Boone*, 5th Dist. No. 06 CA 103, 2007-Ohio-2212, ¶22, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875.

{¶36} In the case at bar, Appellant was permitted inside to his residence, was told he was free to leave, and was not placed under arrest. Additionally, Detective Wade permitted O'Dell to use the restroom if needed. She was also allowed to smoke a cigarette. Appellant and O'Dell were at the residence approximately one and a half to two hours before consenting to the search.

{¶37}  Appellant and O'Dell consented to the search while they were inside their residence.  No threats were made, nor promise given in exchange for Appellant giving the officers permission to search the residence.  In fact, Appellant asked if they could "just get it over with."  Detective Wade explained to him that he had a right to wait for the warrant and that he did not need to consent to the search.  Appellant had a high school education, understood the consent procedure, and still consented to the search.

{¶38}  We find his consent to the search to be valid.

{¶39}  Finally, we do not find any statements that were made by Appellant in the course of this process to have been taken in violation of his Fifth Amendment right to remain silent.  It is unclear from the record as to any statements allegedly made by Appellant that should be suppressed. However, the record reflects that it appears Appellant was not in custody, was in fact in his own home, and was informed that he was free to leave.

{¶40}  Appellant's second assignment of error is overruled.

{¶41}  For the foregoing reasons, the judgment of the Delaware County Court of

Common Pleas is affirmed.

By: Delaney, J.

Hoffman, P.J. and

Farmer, J. concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
SHEILA G. FARMER

*Hoffman, P.J., concurring*

(¶42) I concur in the majority's analysis and disposition of Appellant's first assignment of error.

(¶43) Regarding Appellant's second assignment of error, I do not find exigent circumstances existed in this case to allow entry without first securing a search warrant. To allow warrantless entry based upon mere suspicion of a burglary in progress when there was no indication of any physical harm to the residents, I believe, is a violation of the Fourth Amendment. The police officer(s) should have attempted to contact the residents/owners of the home to verify a burglary occurred **before** entry. They could have continued surveillance until the residents/owners arrived or; at a minimum, until it was determined they were unavailable to be contacted. While the physical appearance of the premises may have supported a suspicion a burglary was in progress, I find it insufficient to support a determination exigent circumstances existed to justify warrantless intrusion under the facts of this case.

(¶44) However, because I agree with the majority's analysis and conclusion Appellant consented to the search and was not in custody, I concur in the decision to overrule Appellant's second assignment of error.

_____
HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| SHANE MACKENZIE | : | |
| | : | |
| Defendant-Appellant | : | Case No. 11-CA-07 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____

HON. PATRICIA A. DELANEY

_____

HON. WILLIAM B. HOFFMAN

_____

HON. SHEILA G. FARMER